# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **PETER SZANTO**, | Case No.    3:18-cv-939-SI LEAD<br>3:18-cv-940-50-SI Consol. |
| Appellant, | |
| | (Bankr. Ct. Case No. 16-33185-pcm7) |
| v. | (Adv. Pro. No. 16-3118-pcm) |
| **JPMORGAN CHASE, N.A.**, *et al.*, | **OPINION AND ORDER** |
| Appellees. | |

Peter Szanto, 11 Shore Pine, Newport Beach, CA 92657. Appellant *Pro Se*.

Kevin H. Kono and Tim Cunningham, DAVIS WRIGHT TREMAINE LLP, 1300 SW Fifth Avenue, Suite 2400, Portland, OR 97201, Frederick B. Burnside, DAVIS WRIGHT TREMAINE LLP, 920 Fifth Avenue, Suite 3300, Seattle, WA 98104. Of Attorneys for Appellees JPMorgan Chase, N.A. and JPMorgan Chase and Co.

James P. Laurick, KILMER, VOORHEES & LAURICK, P.C., Attorneys at Law, 732 NW 19th Avenue, Portland, OR 97209. Of Attorneys for Appellees Bank of America, N.A. and Bank of America Corporation.

**Michael H. Simon, District Judge.**

These consolidated cases come to the District Court as appeals from various opinions and

orders issued by the U.S. Bankruptcy Court for the District Oregon in an adversary proceeding

involving Appellant Peter Szanto (Szanto) and Appellees JPMorgan Chase N.A., JP Morgan

Chase & Co (collectively, Chase), and Bank of America, N.A. (B of A).[1] Szanto appeals the

---

[1] Szanto names Bank of America Corporation (BAC) as an Appellee in some of these consolidated appeals. The Bankruptcy Court dismissed with prejudice all claims against BAC in its first Order resolving B of A and BAC's motion to dismiss, and Szanto does not challenge that

Bankruptcy Court's opinions and orders on Chase and B of A's motions to dismiss, discovery motions filed by Szanto, Szanto's motion to add a necessary and indispensable party, and B of A's motion for summary judgment.

Szanto also filed an Amended Notice of Appeal captioned as from the adversary proceeding, among other purported amended notices of appeal. The Court initially struck this Amended Notice of Appeal along with the others, but later accepted it after Szanto filed a motion for reconsideration. This Amended Notice of Appeal relates to an underlying motion for reconsideration decided by the Bankruptcy Court. For the reasons below, the Court holds that the Bankruptcy Court did not err in deciding the opinions and orders appealed by Szanto and the Court affirms the decisions below.

## STANDARDS

A district court reviews a bankruptcy court's "findings of fact for clear error and conclusions of law and of mixed questions of law and fact *de novo*." *In re Icenhower*, 757 F.3d 1044, 1049 (9th Cir. 2014). "Matters committed to the bankruptcy court's discretion . . . are reviewed for abuse of discretion." *Id.* "A court abuses its discretion when it fails to identify and apply the correct legal rule to the relief requested, or if its application of the correct legal standard was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *In re Roman Catholic Archbishop of Portland in Or.*, 661 F.3d 417, 424 (9th Cir. 2011) (simplified); *see also In re Taylor*, 599 F.3d 880, 887-88 (9th Cir. 2010) ("If the bankruptcy court did not identify the correct legal rule, or its application of the correct legal standard to the facts was illogical, implausible, or without support in inferences

decision on appeal. Thus, the Court does not treat BAC as an Appellee for the specific decisions challenged on appeal, issued by the Bankruptcy Court after it had dismissed BAC from the case.

that may be drawn from the facts in the record, then the bankruptcy court has abused its discretion.").

"Whether the bankruptcy court properly granted summary judgment . . . presents a question of law that this Court reviews *de novo*." *In re Lane*, 959 F.3d 1226, 1229 (9th Cir. 2020). The Court also reviews *de novo* a bankruptcy court's dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016). The Court reviews for abuse of discretion the bankruptcy court's determination to dismiss without leave to amend and with prejudice. *Id.* Similarly, the Court reviews for an abuse of discretion a bankruptcy court's decisions under Rule 19 of the Federal Rules of Civil Procedure. *In re SK Foods, L.P.*, 2013 WL 6488275, at *8 (B.A.P. 9th Cir. Dec. 10, 2013) (citing *Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1022 (9th Cir. 2002); *see also In re Hwang*, 438 B.R. 661, 664 (C.D. Cal. 2010) ("A lower court's decision regarding joinder under Rule 19 is also reviewed for abuse of discretion. *See Kescoli v. Babbitt*, 101 F.3d 1304, 1309 (9th Cir. 1996)"). The Court also reviews for abuse of discretion the bankruptcy court's denial of a motion for reconsideration. *In re Tracht Gut*, 836 F.3d at 1150. "To reverse on the basis of an erroneous evidentiary ruling, [a court] must conclude not only that the bankruptcy court abused its discretion, but also that the error was prejudicial." *In re Slatkin*, 525 F.3d 805, 811 (9th Cir. 2008).

## PROCEDURAL BACKGROUND

On August 16, 2016, Szanto filed a voluntary petition under Chapter 11 of the U.S. Bankruptcy Code. This started Bankruptcy Case No. 16-bk-33185-pcm11 (the Main Bankruptcy Case). The Bankruptcy Court later converted that case, over Szanto's objection, to a proceeding under Chapter 7 (changing the case number to 16-bk-33185-pcm7). On September 27, 2016,

Szanto filed a complaint against Chase and B of A, beginning Case No. 16-ap-3118 (the Adversary Proceeding), the case that is the subject of these consolidated appeals.

The parties engaged in discovery and litigated several motions in the Adversary Proceeding, including discovery motions and dispositive motions. Both Chase and B of A filed motions to dismiss Szanto's Complaint in the Adversary Proceeding. The Bankruptcy Court scheduled a hearing on both motions for January 4, 2017. On December 28, 2016, Szanto filed his First Amended Complaint. The Bankruptcy Court held a status conference on January 4, 2017, and set a schedule for Chase and B of A to respond to Szanto's First Amended Complaint. Chase and B of A responded with motions to dismiss. The Bankruptcy Court granted Chase's motion, allowing Szanto leave to amend some claims. The Bankruptcy Court granted B of A's motion in part. The Bankruptcy Court denied B of A's motion to dismiss Szanto's breach of contract claim and granted B of A's motion against Szanto's remaining claims, some with prejudice and some with leave to amend.

Szanto filed his Second Amended Complaint. Both Chase and B of A again moved to dismiss. The Bankruptcy Court granted Chase's motions on all claims against it. The Bankruptcy Court granted B of A's motions on the two claims other than the breach of contract claim. B of A then filed a motion for summary judgment on the breach of contract claim, which the Bankruptcy Court granted. The Bankruptcy Court then entered final judgment in the Adversary Proceeding.

The opinions and orders of the Bankruptcy Court appealed by Szanto are (1) order granting Chase's motion to dismiss Szanto's First Amended Complaint; (2) order denying Szanto's motion for leave to add an indispensable party to his First Amended Complaint; (3) order granting B of A's motion to dismiss Szanto's First Amended Complaint; (4) opinion granting Chase and B of A's motions to dismiss Szanto's Second Amended Complaint; (5) order

granting Chase's motion to dismiss Szanto's Second Amended Complaint; (6) order granting B of A's motion dismiss Szanto's Second Amended Complaint; (7) order denying Szanto's motion to compel discovery from B of A; (8) order denying Szanto's motion for terminating sanctions against B of A; (9) order denying Szanto's motion to compel against B of A; (10) opinion granting B of A's motion for summary judgment on Szanto's claim for specific performance; (11) order granting B of A's motion for summary judgment; and (12) judgment dismissing the adversary proceeding.

       Szanto also filed an Amended Notice of Appeal in these consolidated cases. ECF 40. The Court struck that filing, along with Szanto's other purported amended notices of appeal filed in related cases, explaining that appeals of new and different orders of the Bankruptcy Court must be filed as separate notices of appeal. ECF 42. Szanto filed a motion for reconsideration in these consolidated cases, asserting that the Amended Notice of Appeal involved a motion for reconsideration of an order that had been "appealed by way of the instant adversarial proceeding appeal." ECF 46 at 3. The Court granted Szanto's motion for reconsideration, stating: "Appellant explains that the underlying bankruptcy court order in the Amended Notice of Appeal (ECF 40) filed in this case resolves a motion for reconsideration of the bankruptcy court's order that Appellant appeals in this case. Accordingly, it is the type of order in which an amended notice of appeal is appropriate." ECF 47. The Court, therefore, accepted Szanto's Amended Notice of Appeal in these consolidated cases.

       Now that the consolidated appeals are fully briefed and the parties have submitted their excerpts of record, it is apparent that the Amended Notice of Appeal does not involve a motion for reconsideration of an order Szanto appealed in any of these consolidated cases. Indeed, the underlying order does not even resolve a motion for reconsideration in the Adversary

Proceeding. The underlying order denies Szanto's motion for reconsideration of the Bankruptcy Court's acceptance of Chase's claim in the Main Bankruptcy Case. As a result, it is not an appropriate subject for an amended notice of appeal in these consolidated cases and should have been filed as a separate notice of appeal. Szanto's characterization of the subject matter of the Amended Notice of Appeal was inaccurate in his motion for reconsideration of this Court's order requiring a separate notice of appeal. Because the Court granted that motion and expressly accepted the filing of the Amended Notice of Appeal, however, Szanto was not on notice that he needed to file any other notice of appeal to preserve his appellate rights as to that order by the Bankruptcy Court. The Court will therefore consider the appeal of that order as well.

## DISCUSSION

Szanto argues his appeals by issues relating to Chase and issues relating to B of A, instead of by the specific opinion or order of the Bankruptcy Court. The Court will do the same in this Opinion and Order.

### A. Chase

Szanto argues that the Bankruptcy Court erred by: (1) denying Szanto's motion to add a necessary and indispensable party; (2) dismissing Szanto's breach of contract claim against Chase; (3) dismissing Szanto's claim for emotional distress; and (4) denying Szanto motion for reconsideration in the Main Bankruptcy Case of the Bankruptcy Court's acceptance of Chase's claim.

#### 1. Motion to add necessary and indispensable party

In the Adversary Proceeding, Szanto moved to add as a necessary and indispensable party the trustee of the Deed of Trust on Szanto's residence, under which Chase was the beneficiary. Chase, through the trustee, had started foreclosure proceedings, which is originally what triggered Szanto's filing for reorganization under Chapter 11. Szanto filed his Rule 19 motion

after Chase moved to dismiss Szanto's fraud claim. Chase argued in its motion to dismiss that if Szanto based his fraud claim on representations Chase purportedly made to the trustee who began the foreclosure, Szanto's fraud claim had to be dismissed. Chase asserted that fraud must be based on false representations made to and relied on by Szanto, not representations made to a third party such as the trustee. Szanto responded that Chase's argument in its motion to dismiss made the trustee a necessary and indispensable party.

The Bankruptcy Court denied Szanto's motion to add the trustee without prejudice. C-ER 38-39, 125-26.[2] The Bankruptcy Court dismissed the fraud claim without prejudice, but dismissed with prejudice any allegation supporting the fraud claim that involved Chase making representations to a third party. The Bankruptcy Court found that statements purportedly made to the trustee did not make the trustee an indispensable party because any misrepresentations made by Chase to the trustee were not actionable by Szanto. The Bankruptcy Court noted that "a misrepresentation must have been made to the plaintiff inducing the plaintiff to rely on the misrepresentation to his injury." C-ER 126, citing *Estate of Schwarz v. Phillip Morris, Inc.*, 206 Or. App. 20, 39 (2006). The Bankruptcy Court also found that if Chase made a misrepresentation to the trustee that the trustee relied on, then any fraud claim would belong to the trustee and not Szanto. The Bankruptcy Court further found that if the trustee engaged in wrongdoing and could be considered the agent of Chase, as argued by Szanto, Chase would be liable for that conduct

---

[2] There are several excerpts of record submitted in this case and the parties did not use contiguous numbering when submitting multiple excerpts of records or consistent naming conventions. For ease of reference, the Court identifies the excerpts of record as follows: Szanto's excerpt of record relating to his appeal of issues relating to Chase (ER1); Szanto's excerpt of record relating to his appeal of the motion for summary judgment granted in favor of B of A (ER2); Szanto's excerpt of record relating to his other challenges involving B of A (ER3); Chase's excerpt of record (C-ER); B of A's excerpt of record relating to Szanto's summary judgment appeal (B-ER1); and B of A's excerpt of record relating to Szanto's remaining appeals (B-ER2).

without the trustee being a party and thus the trustee "would not need to be named as a party" in the Adversary Proceeding. C-ER 126.

Chase argues that because the Bankruptcy Court dismissed Szanto's motion without prejudice and also generally dismissed the fraud claim without prejudice, the Bankruptcy Court treated the motion as one to amend under Rule 15 and not a motion to add an indispensable party under Rule 19. Thus, argues Chase, the Bankruptcy Court's decision should be considered for abuse of discretion. In resolving this motion, however, the Bankruptcy Court discussed the legal standard for the underlying fraud claim and concluded that the trustee was not necessary to the case, rejecting Szanto's argument that the fraud claim rendered the trustee indispensable. If the Bankruptcy Court had treated the motion as one under Rule 15, then the Bankruptcy Court instead would have considered "bad faith, undue delay, prejudice to the opposing party, and futility of amendment." *Ditto v. McCurdy*, 510 F.3d 1070, 1079 (9th Cir. 2007) (quotation marks omitted). That said, as noted above, courts also review motions under Rule 19 for abuse of discretion.

The Bankruptcy Court did not abuse its discretion in denying Szanto's motion. The Bankruptcy Court identified the correct legal standard for alleging fraud. Although the Bankruptcy Court did not specifically identify the legal standard for a necessary and indispensable party under Rule 19, the court's understanding of the rule can be inferred from the Bankruptcy Court's discussion. Rule 19 requires joinder of a person whose absence would preclude complete relief among existing parties. Fed. R. Civ. P. 19(a)(1)(A). Alternatively, joinder is required of any person who claims an interest in the action and is so situated that disposing of the action in the person's absence may (1) impair or impede the person's ability to protect the interest, or (2) leave an existing party subject to a substantial risk of incurring

inconsistent obligations because of the interest. Fed. R. Civ. P. 19(a)(1)(B); *see also White v. Univ. of California*, 765 F.3d 1010, 1026 (9th Cir. 2014) (explaining the "two-pronged inquiry" under Rule 19 as first determining whether "complete relief can be afforded" absent the purported necessary party and second "whether the absent party has a 'legally protected interest' in the subject of the action and, if so, whether the party's absence will 'impair or impede' the party's ability to protect that interest or will leave an existing party subject to multiple, inconsistent legal obligations with respect to that interest").

The Bankruptcy Court's application of the standards for alleging fraud to Szanto's argument that his fraud claim made the trustee an indispensable party under Rule 19 was not "illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *In re Taylor*, 599 F.3d at 887-88. The Bankruptcy Court also did not abuse its discretion in dismissing with prejudice Szanto's fraud claim if the claim relied on alleged misrepresentations made to third parties. Szanto must allege misrepresentations made to and justifiably relied on by him.[3] *See Strawn v. Farmers Ins. Co. of Oregon*, 350 Or. 336, 352, *adhered to on reconsideration*, 350 Or. 521 (2011).

## 2. Breach of contract claim

The Bankruptcy Court granted Chase's motion to dismiss Szanto's First Amended Complaint, discussing the reasons on the record and issuing a short Order. The Bankruptcy Court provided Szanto leave to amend certain claims. The Bankruptcy Court later granted Chase's motion to dismiss all claims against it alleged in Szanto's Second Amended Complaint, issuing

---

[3] Szanto does not allege that Chase made the purported misrepresentations to the trustee with the intent that the trustee convey the misrepresentations to Szanto, and that Szanto rely on them. Such allegations might be actionable against Chase. They still, however, would not make the trustee a necessary and indispensable party.

both an Order and a Memorandum Opinion. Szanto appeals both Orders and the Memorandum Opinion, arguing that the Bankruptcy Court erred by dismissing Szanto's breach of contract claim.

Szanto owned about $1.7 million in the stock of Washington Mutual, Inc., the company that owned Washington Mutual Bank (WaMu). Szanto received dividend checks as a shareholder. Szanto also had a $1 million mortgage on his residence held by WaMu. When WaMu collapsed in 2008, Szanto's stock lost value and Szanto stopped receiving dividend checks. Chase bought some of WaMu's assets and liabilities from the Federal Deposit Insurance Corporation receivership in September 2008, including the mortgage on Szanto's residence. In December 2008, Szanto sued WaMu and Chase, based on his purported losses from his shares of WaMu stock.

Chase and Szanto entered into a written settlement agreement in 2012. Szanto argues that this settlement agreement involved both his residential mortgage and his claims against Chase relating to his securities losses when his WaMu stock lost its value. Szanto asserts that the settlement agreement included the following terms: (1) that his residential mortgage loan amount was reduced to the original $1 million balance (his loan balance at that time had increased to about $1.5 million); (2) he would release his claims relating to his $1.7 million in stock; (3) he would forego any claims for Chase's illegal debt collection practices; and (4) Chase would pay him $4,000. Chase asserts that the settlement agreement did not involve Szanto's residential loan.

The Bankruptcy Court found that the 2012 settlement agreement was unambiguous. The Bankruptcy Court found that the agreement did not include Szanto's residential mortgage but only resolved his claim relating to his securities losses. The Bankruptcy Court therefore

dismissed Szanto's breach of contract claim. Szanto argues that the settlement agreement is

ambiguous and thus the Bankruptcy Court had to allow extrinsic evidence and resolve the issue

at trial.

Considering the issue *de novo*, this Court agrees with the Bankruptcy Court. The

settlement agreement states in the Nature and Effect of Agreement Section, in Subsection 1.1,

that it "consists of a compromise, settlement, and release by Plaintiff [Szanto] of his claims

against JPMorgan" described in Section 2, the Recitals Section. The opening recitals provide

historical information on Szanto's residential loan. Subsection 2.2 states:

> On or about October 24, 2003, Szanto obtained a residential loan
> in the amount of $1,000,000.00 ("Loan") from WaMu. As security
> for the Subject Loan, Plaintiff executed a Deed of Trust ("DOT")
> in the amount of $1,000,000.00, which was recorded in the Orange
> County Recorder's Office on October 29, 2003 as document
> number 2003001332067. The DOT identifies WaMu as lender and
> beneficiary, and California Reconveyance Company as the trustee.

C-ER 197.

The Recitals continue, explaining that WaMu was put into receivership and Chase bought

some of its assets and liabilities, including the loan on Szanto's residence. Subsection 2.5 of the

Recitals then describes Szanto's lawsuit:

> In the Lawsuit, Szanto contends that he and WaMu entered into a
> contract on or about December 1, 2003, which was allegedly
> breached when WaMu failed to pay dividends and interest on
> Szanto's common and preferred shares of WaMu and for the
> devaluation of these shares. Szanto also sought to find JPMorgan
> liable for these purported losses and to recover damages and
> rescission of the Loan to offset Szanto's purported losses in the
> stock market.

C-ER 197-98.

The Agreement Section of the settlement agreement explains that in compromise of

Szanto's claims in the Lawsuit, Szanto will dismiss the Lawsuit and release Chase from all

claims relating to the Lawsuit, and Chase will pay Szanto $4,000. The settlement agreement also

provides in Subsection 4.1:

> Except as to the underlying Loan obligation of Szanto as reflected
> in the Loan documents, including but without limitation, the
> subject Loan note, and Deed of Trust, this Agreement constitutes
> the entire settlement agreement between the Parties hereto
> pertaining to the subject matter hereof and supercedes all prior and
> contemporaneous settlement agreements and understandings of the
> Parties; there are no warranties, representations or other
> agreements between the Parties pertaining to the subject matter
> hereof except as expressly set forth herein.

C-ER 200.

Considering the text of the settlement agreement, the Bankruptcy Court correctly

determined that the agreement was unambiguous and did not include an agreement between

Szanto and Chase to renegotiate Szanto's residential loan to a $1 million balance. The settlement

agreement was directed at Szanto's claims in the Lawsuit. Those claims were that WaMu

breached its purported contract relating to Szanto's stock ownership. The *claims* in the lawsuit

did not relate to any alleged breach involving Szanto's residential loan. Szanto raised his

residential loan in the Lawsuit only as a measure of damages—to offset the alleged damages

from the harm from Szanto's stock losses. Thus, the claims that were settled were not based on

Szanto's residential loan. Further, the only reference to a $1 million balance is the recitation of

historical facts that WaMu entered into a loan agreement with Szanto in 2003 for $1 million, he

executed a Deed of Trust, and the Deed of Trust was recorded. There is nothing in the settlement

agreement about the parties agreeing to modify Szanto's then-current loan balance or entering

into a new agreement of $1 million relating to Szanto's residential loan. Indeed, the settlement

agreement states the opposite when it expressly carves out Szanto's residential loan in

Subsection 4.1 from the scope of the settlement agreement.

Szanto wanted to introduce extrinsic evidence of his understanding of the settlement agreement and the purported negotiations before the settlement agreement was signed. Szanto argues that the Bankruptcy Court was required under California law to consider extrinsic evidence of contract negotiations to determine whether the text is ambiguous because California law recognizes latent ambiguities. Szanto cites *Wolf v. Walt Disney Pictures & Television*, 162 Cal. App. 4th 1107 (2008), *as modified on denial of reh'g* (June 4, 2008). The court in *Wolf* noted that it was not necessarily erroneous for the trial court to entertain, even provisionally, extrinsic evidence of post-contract conduct to show a latent ambiguity. *Id.* at 1133. The decision in *Wolf* does not support Szanto's argument because he is arguing that a court *must* consider *pre-contract* conduct. *Wolf* allowed that a district court *may* consider *post-contract* conduct.

Additionally, Szanto's argument contradicts California law. Under California law, if a court finds the text of a contract unambiguous because it is not reasonably susceptible to the interpretation argued by the other party, the court need not consider extrinsic evidence. *See, e.g.*, *Dore v. Arnold Worldwide, Inc.*, 39 Cal. 4th 384, 393 (2006) ("When a dispute arises over the meaning of contract language, the first question to be decided is whether the language is 'reasonably susceptible' to the interpretation urged by the party. If it is not, the case is over." (quoting *Southern Cal. Edison Co. v. Superior Court*, 37 Cal. App. 4th 839, 847 (1995))); *see also id.* at 391 ("An ambiguity arises when language is reasonably susceptible of more than one application to material facts."); *id.* at 396 (Corrigan, J., concurring) ("If I understand the majority's premise, a 'latent' ambiguity is simply one that becomes *manifest* when one attempts to apply the contract's language to the specific facts that gave rise to the parties' legal dispute. Even then, extrinsic evidence is admissible only to prove a meaning the contract's language will reasonably accommodate." (emphasis in original)); *accord Founding Members of the Newport*

*Beach Country Club v. Newport Beach Country Club, Inc.*, 109 Cal. App. 4th 944, 956 (2003)

("California recognizes the objective theory of contracts under which it is the objective intent, as

evidenced by the words of the contract, rather than the subjective intent of one of the parties, that

controls interpretation." (simplified)).

As explained by the Ninth Circuit, under California law,

> A party's assertion of ambiguity does not require the district court
> to allow additional opportunities to find or present extrinsic
> evidence if the court considers the contract language and the
> evidence the parties have presented and concludes that the
> language is reasonably susceptible to only one interpretation. *See
> Hervey v. Mercury Cas. Co.*, 185 Cal. App. 4th 954 (2010)
> ("Although parol evidence may be admissible to determine
> whether the terms of a contract are ambiguous, it is not admissible
> if it contradicts a clear and explicit [contract] provision." (citations
> omitted)). That conclusion can be reached on a motion for
> summary judgment or, as here, on a motion to dismiss if the
> evidence can properly be considered under Rule 12(b)(6).

*Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1017 (9th Cir. 2012). The Bankruptcy

Court's decisions on this issue are affirmed.

### 3. Emotional distress claim

The Bankruptcy Court granted Chase's first motion to dismiss Szanto's claim for

intentional or negligent emotional distress, dismissing the claim with prejudice. Szanto argued to

the Bankruptcy Court that Chase "punished" Szanto for filing the lawsuit about the securities

losses. He asserted that Chase continued foreclosure proceedings, refused to negotiate the $1

million Szanto tendered after the 2012 settlement agreement, and continued to act in an improper

manner against Szanto throughout the foreclosure and bankruptcy proceedings. He contended

that Chase's conduct caused Szanto extreme emotional and physical distress. Szanto asserted that

this is a pattern of conduct for Chase.

The Bankruptcy Court dismissed Szanto's claim for intentional infliction of emotional distress because the court found that Szanto failed to allege conduct by Chase that was so extraordinary and outrageous, beyond all possible bounds of socially tolerable behavior, and beyond the bounds of decency, as to be considered atrocious or utterly intolerable in a civilized community. C-ER 147. The Bankruptcy Court cited *House v. Hicks*, 281 Or. App. 348, 357 (2008), for the legal standards. C-ER 140. The Bankruptcy Court did not err in dismissing this claim. The conduct of Chase alleged by Szanto did not rise to level required under Oregon law to state a claim for intentional infliction of emotional distress. *See, e.g.*, *Mullen v. Meredith Corp.*, 271 Or. App. 698, 713 (2015) (claim must allege that "the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct"); *Richer v. Poisson*, 137 Or. App. 157, 160 (1995) (claim must allege "that the defendant's action was outrageous in the extreme and exceeded a reasonable limit of socially tolerable conduct").

The Bankruptcy Court dismissed Szanto's claim for negligent infliction of emotional distress because Szanto failed to allege a special relationship between he and Chase. The Bankruptcy Court found that it would be futile to allow Szanto to replead either intentional or negligent infliction of emotional distress. The Bankruptcy Court cited *Mullen* in concluding that a special relationship had to be alleged for negligent infliction of emotional distress under Oregon law. *Mullen*, however, explained that there were two circumstances under which a plaintiff could allege negligent infliction of emotional distress without physical injury—when there was a special relationship and when the defendant "infringed on some legally protected interest apart from causing the claimed distress." *Mullen*, 271 Or. App. at 711 (quoting *Paul v. Providence Health Sys.-Or.*, 351 Or. 587, 597 (2012)).

In 2016, the Oregon Supreme Court analyzed the circumstances outside the context of a special relationship under which a plaintiff may recover damages for emotional distress, to determine whether bystander injuries should be covered by the tort. *Philbert v. Kluser*, 360 Or. 698 (2016). The Oregon Supreme Court discussed that historically these included: (1) when there is physical injury; (2) when the tortfeasor acted intentionally; and (3) "when a defendant negligently causes foreseeable, serious emotional distress and also infringes some other legally protected interest." *Id.* at 702-03. The third category includes legally protected interests arising from various sources, including court orders, statutes, and common law. *Id.* at 703. The Oregon Supreme Court concluded that bystander injuries were a part of this category, so long as the bystander perceives serious bodily injury to a close family member. *Id.* at 711.

In light of Oregon law allowing negligent infliction of emotional distress without a special relationship under narrow circumstances, the mere fact that Szanto did not allege a special relationship is not fatal to his negligent infliction of emotional distress claim. Considering the claim *de novo*, however, Szanto has alleged no other legally protected interest infringed by Chase. Even if one of his other claims could potentially have provided the necessary legally protected interest, all of his statutory and common law claims were dismissed with prejudice. He only appealed the dismissal of his breach of contract claim, which the Court has affirmed. The Bankruptcy Court's dismissal of Szanto's negligent infliction of emotional distress claim is affirmed, on different grounds.

### 4.  Motion for reconsideration

Szanto's final appeal relating to Chase is his Amended Notice of Appeal on his motion for reconsideration in the Main Bankruptcy Case. Chase argues that the Court lacks jurisdiction to hear this appeal because the Main Bankruptcy Case and the Adversary Case are separate cases and require separate notices of appeal. Chase cites cases in which courts declined to consider

issues in separate cases when no notices of appeal were filed. Chase also asserts that Szanto failed to appeal the Bankruptcy Court's final order on Santo's Motion for Reconsideration (Main Bankruptcy Case Docket No. 730). Szanto, however, filed his Amended Notice of Appeal on that order on May 28, 2019. ECF 40. After initially striking it, the Court accepted it on June 21, 2019. ECF 47. Thus, the Court has jurisdiction and will consider the issue raised in the Amended Notice of Appeal.

Szanto appeals the Bankruptcy Court's denial of Szanto's motion for reconsideration of the Bankruptcy Court's acceptance of Chase's secured claim in the Main Bankruptcy Case. The Bankruptcy Court allowed the claim on November 17, 2017. On April 1, 2019, Szanto moved for reconsideration. He asserted that he learned for the first time at a March 28, 2019 hearing that Chase did not possess the Note on Szanto's residence, that Chase did not have a properly executed assignment of the Note, and that Chase did not have a proper assignment of the Deed of Trust. Thus, Szanto argued, Chase did not have a proper claim that it was a secured creditor under the Note and Deed of Trust.

The Bankruptcy Court denied Szanto's motion for reconsideration for two reasons. First, the Bankruptcy Court found it untimely. The Bankruptcy Court noted that although Szanto did not identify under what provision of Rule 60 he was moving, he appeared to be moving under subsection (1) based on mistake, inadvertence, surprise, or excusable neglect, subsection (2) based on newly discovered evidence that could not timely have been discovered with reasonable diligence, or subsection (3) based on fraud. Under Rule 60(c) a motion under subsections (1), (2), or (3) must be brought within one year of the date of the challenged order. Because Szanto filed his motion more than one year from the date of the Bankruptcy Court's order allowing Chase's claim, the Bankruptcy Court found Szanto's motion to be untimely.

The Bankruptcy Court also alternatively denied the motion on the merits. The

Bankruptcy Court explained:

> When reconsideration is sought under FRCP 60(b) after the appeal
> period has expired, the party seeking reconsideration is not
> permitted to revisit the merits of the underlying judgment or argue
> that the trial court committed some legal error in arriving at that
> judgment. Instead, that party is limited to the narrow grounds
> enumerated in FRCP 60(b). These grounds generally require a
> showing that events subsequent to the entry of the judgment make
> its enforcement unfair or inappropriate, or that the party was
> deprived of a fair opportunity to appear and be heard in connection
> with the underlying dispute.
>
> This distinction is drawn in order to preserve the finality of the
> order allowing or disallowing a claim. While Rule 3008 permits an
> order disallowing a claim to be reconsidered, connection with the
> underlying dispute, the merits of the claim objection are no longer
> fair game unless the claimant first establishes a good excuse,
> cognizable under FRCP 60(b), for its failure to timely contest the
> objection.

ECF 40 at 6-7 (quoting *In re Wylie*, 349 B.R. 204, 209-10 (B.A.P. 9th Cir. 2006) (simplified).

The Bankruptcy Court first noted that many of Szanto's arguments are speculative

because the court had made no determination whether Chase does or does not have possession of

the Note. The Bankruptcy Court had merely decided at the hearing on Chase's request for relief

from stay, which Szanto asserts triggered his concern that Chase did not have possession of the

Note and led to the motion for reconsideration, that Chase had a colorable claim to the property

at issue. Relief from stay does not require a determination on the merits, but merely a finding of

a colorable claim.

The Bankruptcy Court next concluded that Szanto failed to show that events subsequent

to the Bankruptcy Court's acceptance of Chase's claim made allowance of the claim unfair or

inappropriate, or that Szanto was deprived of a fair opportunity to appear and be heard in

connection with Chase's claim. The Bankruptcy Court discussed that the documents attached to

Chase's original proof of claim form are the same documents attached to Chase's motion for

relief from stay. The Bankruptcy Court thus concluded that Szanto was on notice in 2017 of

possible documentation errors and he should have investigated those purported problems in

disputing Chase's proof of claim. The Bankruptcy Court also noted that Szanto had filed the

Adversary Proceeding against Chase and also could have raised these concerns in that

proceeding. The Bankruptcy Court concluded that Szanto "has not established good cause for

waiting over 16 months after entry of the Order Allowing Claim to file the Motion, or that his

delay is attributable to excusable neglect, newly discovered evidence, fraud or any of the grounds

found in Rule 60(b)." ECF 40 at 8. The Bankruptcy Court also noted that Szanto failed to appeal

the order allowing Chase's claim and that a motion for reconsideration cannot be a substitute for

an appeal.

In his current appeal, Szanto concedes that Chase's proof of claim attached the Note and

Deed of Trust naming WaMu and not Chase. He also admits that in Chase's motion for relief

from stay, it attached the same Note and Deed of Trust attached to Chase's original proof of

claim. Szanto argues that there is no assignment of the Note attached to the motion for relief

from stay and thus "Chase's claim is a nullity." As pointed out by the Bankruptcy Court,

however, there was no assignment of the Note when Chase filed its proof of claim in 2017. That

is when Szanto was put on notice that something may be missing from the documentation

submitted by Chase. The documentation submitted with the motion for relief from stay is the

same as the documentation submitted with the proof of claim in 2017. Szanto's argument that

"Chase's claim is a nullity" misunderstands the current procedural posture of this issue. That is

an argument that Szanto could have asserted in opposition to Chase's proof of claim or in

appealing the Bankruptcy Court's original order allowing the claim (which Szanto did not do).

Now Szanto must explain why he meets the standards for reconsideration. He fails to do so. The Bankruptcy Court did not abuse its discretion in denying Szanto's motion for reconsideration as both untimely and on the merits.

## B.  Bank of America

Szanto argues that the Bankruptcy Court erred in granting summary judgment on Szanto's breach of contract claim against B of A. Szanto also argues that the Bankruptcy Court erred in its discovery decisions, denying Szanto's motions to compel discovery from B of A and for terminating sanctions against B of A. Szanto asserts that because of these errors the Bankruptcy Court's decision on summary judgment must be reversed. Szanto further argues that the Bankruptcy Court erred in denying Szanto relief for emotional distress.

### 1.  Motion for Summary Judgment

Szanto argues that the Bankruptcy Court erred in granting summary judgment to B of A on Szanto's breach of contract claim. Szanto argues that he and B of A entered into a loan modification of Szanto's home equity line of credit (HELOC) and that B of A breached the terms of that loan modification. Szanto's original HELOC allowed for interest-only payments for the first five years (2006-2011). B-ER 185. By 2016, the time of the alleged loan modification, Szanto was well into the "repayment" phase of his HELOC and was no longer in the interest-only "draw" phase.

Szanto contends that about three weeks before he filed for Chapter 11 protection, when he was preparing his petition and knew he was about to be protected from making any payments to B of A under bankruptcy's automatic stay, he paid B of A the minimum payment due on his loan of $45,300. Szanto asserts that in return, B of A orally agreed to reinstate the interest-only payments going forward. Szanto argues that he would not have made that $45,300 payment mere weeks before entering the protection of the Bankruptcy Court unless he received a benefit agreed

to by B of A—the reinstatement of the interest-only payment term. Szanto also notes that B of A paid him approximately $700, which he states was reimbursement for his costs associated with pursuing the loan modification. Szanto submitted to the Bankruptcy Court B of A's statement showing that $45,300 was the minimum due, B of A's receipt of Szanto's $43,500 payment, and evidence of B of A's $700 payment to Szanto. Szanto also submitted a declaration to the Bankruptcy Court stating that B of A personnel told Szanto that a signed and notarized "novation" of the loan modification had been mailed to Szanto, but he never received that document. Szanto provided to the Bankruptcy Court the names of five individuals at B of A who he contended knew about the loan modification and whose testimony he believed would support his breach of contract claim.

The Bankruptcy Court found that under California law the statute of frauds applies to Szanto's HELOC because it is secured by real property, and thus also applies to the purported loan modification. Considering this issue *de novo*, the Court agrees. *See* Cal. Civ. Code § 1624 (establishing that the statute of frauds applies to contracts "for the sale of real property, or of an interest therein"); Cal. Civ. Code § 1698 ("Unless the contract otherwise expressly provides, a contract in writing may be modified by an oral agreement supported by new consideration. The statute of frauds (Section 1624) is required to be satisfied if the contract as modified is within its provisions."); *Reeder v. Specialized Loan Servicing LLC*, 52 Cal. App. 5th 795, 801 (2020) ("We conclude the verbal agreement to refinance or re-amortize plaintiff's loan is subject to the statute of frauds and is unenforceable on that ground. . . . The authorities are clear that the alleged oral agreement is subject to the statute of frauds. An agreement for the sale of real property or an interest in real property comes within the statute of frauds. That includes a promissory note and a deed of trust securing performance under the note. . . . Further, an agreement to modify a

contract that is subject to the statute of frauds is also subject to the statute of frauds."
(simplified)); *Granadino v. Wells Fargo Bank, N.A.*, 236 Cal. App. 4th 411, 416 (2015), *as
modified* (Apr. 29, 2015) ("An agreement that modifies a contract subject to the statute of frauds
is likewise subject to the statute of frauds.").

In *Reeder*, the plaintiff asserted that an oral agreement modified the terms of his home
equity line of credit. The California Court of Appeals held that the statute of frauds applied:
"Here, the alleged oral agreement modified the 2005 loan and the trust deed, negating the
provision in the trust deed stating that '[a]ll amounts due under the [line of credit] must be paid
in full not later than April 1, 2015.' It necessarily follows that the alleged verbal loan
commitment was subject to the statute of frauds and therefore invalid." *Reeder*, 52 Cal. App. 5th
at 801-2 (alterations in original).

Similarly, in *Rossberg v. Bank of America, N.A.*, the plaintiffs alleged that B of A entered
into a "partially written, partially verbal, and verbal agreement" to modify the plaintiffs'
loans. 219 Cal. App. 4th 1481, 1502 (2013), *as modified on denial of reh'g* (Sept. 26, 2013). The
California Court of Appeals explained:

> Here, the Rossbergs alleged the loan modification agreement they
> entered into with BofA modified the terms of their promissory note
> and deed of trust by changing the interest rate and principal
> balance, among other things. The statute of frauds therefore
> required the loan modification agreement to be in a writing and
> signed by BofA. The Rossbergs, however, concede there is no
> written loan modification agreement signed by BofA. They
> therefore failed to allege a cause of action for breach of the
> purported loan modification agreement.

*Id.* at 1503.

Szanto's argument that the statute of frauds does not apply fails for the same reason as
the arguments of the plaintiffs in *Reeder* and *Rossberg*. Szanto is alleging a loan modification of
the underlying HELOC, which is secured by a deed of trust. Szanto alleges that the modification

PAGE 22 – OPINION AND ORDER

reinstates the expired interest-only term and alters his monthly payment. Thus, the statute of frauds necessarily applies.

Szanto also argues that if the statute of frauds applies, his $43,500 check and B of A's $700 payment are sufficient written evidence of the loan modification. The Bankruptcy Court rejected this argument, finding that these writings do not contain the critical term that Szanto is arguing—that the loan was modified to reinstate interest-only payments. The Bankruptcy Court also noted that it had ordered B of A to provide to Szanto the recorded calls relating to Szanto's loan. The Bankruptcy Court explained that if the calls supported Szanto's argument, in the three months between his receipt of the audio calls and when his response to the motion for summary judgment was due he could have had the calls transcribed and submitted the transcriptions as evidence. The Bankruptcy Court additionally stated that Szanto could have requested contact information for the specific B of A employee on the telephone call and obtained a declaration from that employee. The Bankruptcy Court also noted that Szanto did not submit as evidence his own notes that he claims to have taken contemporaneously while talking on the telephone with B of A representatives. Regardless, the Bankruptcy Court ruled that a writing signed by B of A showing the purportedly modified term of reinstated interest-only payments was critical missing evidence.

Considering the application of the statute of frauds *de novo*, the Court agrees with the Bankruptcy Court. Szanto does not provide a writing, signed by B of A, that contains the essential purported modification of reinstating interest-only payments. *Sterling v. Taylor*, 40 Cal. 4th 757, 766 (2007) ("A memorandum satisfies the statute of frauds if it identifies the subject of the parties' agreement, shows that they made a contract, and states the essential contract terms with reasonable certainty. Only the essential terms must be stated, details or

particulars need not be." (simplified)); *Jacobs v. Locatelli*, 8 Cal. App. 5th 317, 325 (2017), *as modified* (Feb. 28, 2017) (noting that the agreement must "provide the essential terms, and it is clear that extrinsic evidence cannot *supply* those required terms" (quotation marks omitted) (emphasis in original)).

The Court understands Szanto's argument that he would not have made the minimum payment due of $43,500 while preparing to file for Chapter 11 protection absent some reason, *e.g.*, a loan modification. Considering Szanto's motivation, however, does not suffice to satisfy the statute of frauds. Szanto's payment, and B of A's reciprocal $700 payment, are not writings containing with reasonable certainty the essential terms of the purported agreement.

Szanto also argues that the Court should apply the exception to the statute of frauds in § 1624(b). That section, however, applies only to "qualified financial contracts," defined as contracts in which the parties are "other than a natural person." Cal. Civ. Code § 1624(b)(2). Szanto is a natural person. Thus, this exception to the statute of frauds does not apply.

Szanto further argues that the Bankruptcy Court erred in concluding that Szanto's performance did not take the alleged contract out of the statute of frauds. The Bankruptcy Court correctly stated that payment of money cannot take a contract out of the statute of frauds. The Bankruptcy Court further determined that Szanto did not "otherwise change his position in reliance on defendant's alleged agreement to modify the HELOC." B-ER 293. Szanto argues that he significantly changed his position, in several ways. He asserts that he paid off his arrearages, late charges, and interest, and accepted B of A's payment. These are all changes relating to the payment of money and do not suffice to take the purported modification out of the statute of frauds. Szanto also argues that he forfeited his right to seek bankruptcy protection for the amounts owed to B of A. This also is about the payment of money. Szanto lost bankruptcy court

protection for the $43,500 paid, when he otherwise might have delayed making that payment or potentially been able to pay a lesser amount. He did not, however, lose bankruptcy protection for other amounts owed (such as the principal or future interest), or against future foreclosure by B of A for future nonpayment.

Szanto also argues that he changed his position by waiving his right to challenge B of A's purported unlawful debt collection practices and affirming his obligation on the entire amount of the HELOC loan with no offset and under all of the original terms except with interest-only payments. These purported changes assume that there is an enforceable loan modification as claimed by Szanto. In other words, Szanto is arguing a changed position under the modified agreement he asserts exists. The point of the doctrine on performance and changes that a party makes in reliance, however, is that the changes have been made regardless of the existence of the purported contract, which is why the contract needs to be found enforceable out of equity. For example, Szanto did not actually waive his rights to challenge B of A's purported unlawful debt collection practices—he did not, for example, sign a separate document waiving those rights on the understanding that B of A separately would sign the loan modification. If the Court were to find no loan modification, then there is no contract in place under which there is a term that Szanto waived pursuing a claim against B of A for unlawful debt collection practices. Thus, Szanto did not change his position with respect to pursuing such a claim. Szanto did not actually make these asserted changes unless the Court assumes that the loan modification is in effect with all the terms as Szanto asserted. Such circular reasoning does not support finding the loan modification to be in effect.

Finally, Szanto argues that B of A is foreclosed from disputing the loan modification under the doctrine of promissory estoppel. Szanto did not assert a claim for promissory estoppel

and did not raise an argument to the Bankruptcy Court about promissory estoppel. He may not

raise it for the first time on appeal.[4] *See, e.g.*, *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041,

1053 (9th Cir. 2007) (declining to consider a constitutional claim presented for the first time on

appeal).

Even if Szanto did not waive his argument that he could assert a promissory estoppel

claim, the Court would reject it on the merits. Under California law, "neither section 1698 nor

the statute of frauds [will] defeat [a] homeowners' promissory estoppel claim." *Jones v.*

*Wachovia Bank*, 230 Cal. App. 4th 935, 947 (2014). Such a claim, however, only applies when

the promissor "should reasonably expect a substantial change of position, either by act or

forbearance, in reliance on his promise, if injustice can be avoided only by its enforcement." *Id.*

at 944. As discussed above, Szanto failed to allege a substantial change of position, other than

that he paid the minimum amount due under the HELOC. "Merely submitting a modification

application or making payments to the beneficiary or servicer, however, is insufficient to

establish the required detrimental reliance, because plaintiff was already legally obligated to

make payments under the loan." *Ortiz v. Am.'s Servicing Co.*, 2012 WL 2160953, at *7 (C.D.

Cal. June 11, 2012); *see also De La Cruz v. Citi Mortg. Inc*., 2012 WL 487004, at *3 (E.D. Cal.

Feb. 14, 2012) ("Further, plaintiffs do not allege sufficient reliance on the new representation, in

that plaintiffs already were bound contractually to make loan payments."); *Newgent v. Wells*

*Fargo Bank, N.A.*, 2010 WL 761236, at *7 (S.D. Cal. Mar. 2, 2010) ("First, Plaintiff alleges that

she made a payment that she would not have made if she did not believe Wells Fargo was

---

[4] Szanto also argues that the Bankruptcy Court erroneously considered the declaration of
B of A's counsel as evidence. The Bankruptcy Court did not err in its treatment of the
declaration of counsel, which the Bankruptcy Court cites only for its attached exhibits—the
HELOC contract and Szanto's discovery responses produced in the litigation.

renegotiating her mortgage. Because Plaintiff was already legally obligated to make payments on her mortgage, the Court concludes that the payment in reliance on the promise that Wells Fargo would delay the trustee's sale was not detrimental."). The Bankruptcy Court did not err in granting summary judgment to B of A.

### 2.  Discovery Motions

Szanto argues that the Bankruptcy Court's summary judgment decision must be reversed because the Bankruptcy Court erroneously denied Szanto's three discovery motions. Szanto argues that the Court must review the Bankruptcy Court's discovery orders *de novo*. Not only are such decisions reviewed for abuse of discretion but to reverse, the Court also must find that any such error was prejudicial. *In re Slatkin*, 525 F.3d at 811.

### a.  First motion to compel

On June 15, 2017, Szanto submitted Requests for Production to B of A requesting all records, on any media, of telephone conversations between B of A agents and employees and Szanto relating to his HELOC for the years 2015-2017. He also requested more generally production of any documents relating to his loan in B of A's possession, for the years 2015-2017. Szanto previously had submitted similar requests, to which B of A had responded that it did not possess transcripts of telephone calls but it did possess recordings. On July 18, 2017, B of A responded to Szanto's second requests. B of A objected to the requests and unduly burdensome, overly broad, and not sufficiently limited in time and scope. B of A then stated that it "will" produce relevant documents at a time mutually agreed-upon by the parties. On July 25, 2017, Szanto moved to compel, arguing that B of A's vague assertion that it would produce relevant documents at some point in the future was inadequate. B of A produced written documents to Szanto that same date, asserting that it would produce the audio recordings from within a few

days. B-ER2 81-82. B of mailed the audio recordings on July 26, 2017, and requested that Szanto withdraw his motion to compel. B-ER2 83.

On August 8, 2017, the Bankruptcy Court denied Szanto's motion to compel, subject to B of A providing to Szanto within 14 days another audio recording of the telephone conversations responsive to Szanto's discovery request, in a reasonably usable form. The Bankruptcy Court did not abuse its discretion in denying Szanto's motion. B of A had already produced responsive documents and had produced the audio files, although Szanto asserted he could not access those. Requiring B of A to produce a second copy within 14 days was not an abuse of discretion.

### b. Motion for terminating sanctions

Pursuant to the Bankruptcy Court's August 8th Order, B of A provided Szanto with another copy of the audio recordings. It was password protected. Counsel for B of A represented to the Bankruptcy Court that counsel tested it on both a Mac and a Windows computer. Szanto stated that he could not access the audio files. B of A provided Szanto with a link to national counsel's secure network to access the audio recordings, but Szanto rejected that approach. B of A's local counsel offered to allow Szanto to listen to the audio at counsel's office, but Szanto also rejected that approach.

On August 29, 2017, Szanto filed a motion requesting terminating sanctions for B of A's purported failure to provide the audio recording as ordered by the Bankruptcy Court. On September 5, 2017, the Bankruptcy Court denied Szanto's motion for terminating sanctions and instead ordered B of A to send Szanto via overnight delivery a CD not password protected containing the audio recordings responsive to Szanto's discovery requests. The Bankruptcy Court included in the Order a provision that Szanto accepted the risk of a non-password protected CD being delivered.

PAGE 28 – OPINION AND ORDER

Szanto argues that terminating sanctions were required based on B of A's failure to comply with the Court's discovery order. "Dismissal of a case for disobedience of a court order is an exceedingly harsh sanction which should be imposed only in extreme cases, and then only after exploration of lesser sanctions." *Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884, 891 (9th Cir. 2019) (quoting *Mann v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 488 F.2d 75, 76 (5th Cir. 1973) (per curiam)); *see also R & R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240, 1247 (9th Cir. 2012) ("Under this circuit's law, because the sanction amounted to dismissal of a claim, the district court was required to consider whether the claimed noncompliance involved willfulness, fault, or bad faith, and also to consider the availability of lesser sanctions." (citations omitted)). B of A's conduct in sending a second CD that it tested but Szanto could not open, then offering two other alternative options for Szanto to access the audio files, did not rise to the level of an extreme case, willfulness, fault, or bad faith. The Bankruptcy Court did not abuse its discretion in refusing to impose terminating sanctions and alternatively ordering B of A to provide a third, non-password protected CD.

### c. Second motion to compel

On November 6, 2017, Szanto moved to compel B of A to respond to an interrogatory propounded by Szanto. The interrogatory requested the name, current employment status, address, and telephone number for "any and all persons" who "talked personally" with Szanto about his HELOC at any time since the loan began and the date and place of the conversations. B of A objected to the interrogatory as unduly broad, overly burdensome, not sufficiently limited in time and scope, and requesting improper confidential information including personal addresses and telephone numbers. Despite those objections, B of A responded by referring Szanto to the audio recordings that B of A had produced along with the accompanying document production of related notes. B of A also stated that "if and when [Szanto] identifies a particular person or

persons whom he believes has relevant information . . . BANA will review its personnel records to ascertain whether the deponent is presently an employee of BANA, and inquire if undersigned counsel may accepted [sic] service on behalf of deponent." ER3 58. Szanto argued that he was entitled to specific names in response to his interrogatory.

On April 30, 2018, the Bankruptcy Court denied Szanto's motion to compel. The Bankruptcy Court found the interrogatory overbroad, because it requested information about all employees who discussed anything about Szanto's loan, when the case only involved the purported 2016 loan modification. The Bankruptcy Court also noted that B of A had been ordered to provide Szanto with recordings of all telephone conversations relating to his loan during the relevant time and that Szanto did not assert that he did not receive those recordings. The Bankruptcy Court agreed with B of A that Szanto could obtain the information about the customer service representative names from those recordings. The Bankruptcy Court noted that Szanto could then request more specific information on any individual identified from the recordings, as offered by B of A in its response to the interrogatory.

The Bankruptcy Court also found persuasive that fact that Szanto apparently knew the names of the five customer service representatives he spoke with about his loan modification, including the one with whom he made the agreement, before submitting his interrogatory. Even so, Szanto did not request information specific to those persons. Nor did he later follow the procedure offered by B of A with respect to those persons. At the hearing on this motion, Szanto stated that he was being "a little bit cagey" because he believed B of A would fire the people if he specifically identified them. The Bankruptcy Court determined that Szanto's motion to compel was not filed for a legitimate purpose, the disputed interrogatory sought irrelevant

information, and B of A adequately directed Plaintiff to responsive information. Thus, the Bankruptcy Court denied the motion.

Szanto states that he has always known the names of the persons at B of A with whom he spoke about the alleged loan modification, and the dates and times of the conversation. He did not, however, submit interrogatories for contact information specific to those persons, request a deposition or declaration from those persons, or request production of documents or other information from those persons. He instead submitted an interrogatory broadly requesting information about all customer service agents from all time periods who had any discussion about his HELOC on any topic. Although Szanto characterizes this as a litigation strategy to hide the relevant customer service agents among the irrelevant, the Bankruptcy Court did not abuse its discretion in finding that this interrogatory was overbroad and requested irrelevant information, or in finding that B of A adequately responded by referring Szanto to its audio CD and document production, which is permitted under Rule 33(d) of the Federal Rules of Civil Procedure. The Bankruptcy Court's denial of this motion to compel is affirmed.

### 3. Emotional Distress

Szanto's argument relating to his entitlement to emotional distress damages is unclear. Szanto alleged a claim for intentional and negligent emotional distress in his First Amended Complaint, which the Bankruptcy Court dismissed with prejudice. B-ER 82-83; C-ER 147-48, 152-53. It does not appear that Szanto is appealing that decision.[5] Instead, it appears that Szanto is arguing that the Bankruptcy Court, distinct from dismissing Szanto's emotional distress claim

---

[5] To the extent Szanto's brief could be interpreted as appealing this decision, for the same reasons the Court affirmed the Bankruptcy Court's dismissal of Szanto's emotional distress claim against Chase, the Court affirms the Bankruptcy Court's dismissal of Szanto's emotional distress claim against B of A.

as alleged in his First Amended Complaint, should have *sua sponte* awarded Szanto emotional distress damages for abusive litigation conduct by B of A and its counsel, particularly discovery abuses.[6] Santo argues that the Bankruptcy Court awarded emotional distress damages in a related adversary proceeding involving Szanto's family members without that specific claim being alleged, and thus the Bankruptcy Court had to award him emotional distress damages in the Adversary Proceeding against B of A.

This portion of Szanto's appeal is frivolous and denied. Szanto's family members alleged a counterclaim for wrongful use of civil proceedings. The Bankruptcy Court found in their favor and awarded emotional distress damages, which are allowed for such a claim. ER3 85-133. That the Bankruptcy Court awarded emotional distress damages on a counterclaim in a different proceeding is irrelevant to whether Szanto is entitled to emotional distress damages in the Adversary Proceeding, let alone *sua sponte* for purported discovery abuses. Further, as found above, the Bankruptcy Court did not abuse its discretion in denying Szanto's discovery motions.

## CONCLUSION

The decisions of the Bankruptcy Court are AFFIRMED.

**IT IS SO ORDERED**.

DATED this 5th day of November, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

---

[6] B of A moves to strike this portion of Szanto's brief. B of A relies on Rule 12(f) of the Federal Rules of Civil Procedure, which states that a court "may strike from a *pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) (emphasis added). Rule 7(a), however, establishes that these are pleadings: (1) complaint; (2) answer to a complaint; (3) answer to a counterclaim designated as a counterclaim; (4) answer to a crossclaim; (5) a third-party complaint; (6) answer to a third-party complaint; and (7) reply to an answer, if allowed by the court. A brief is not a pleading and thus not subject to Rule 12(f). B of A's motion to strike under Rule 12(f) is denied.